# EXHIBIT A

*Defendants' Proposed Instructions –*
*Liability Phase*

## JURY INSTRUCTIONS (LIABILITY)

## INTRODUCTORY INSTRUCTIONS

1.1

**Introduction** - This case involves one patent, called the '592 patent (it actually has a longer number, but for convenience we'll use just the last three digits). Northgate's patent relates to technology in the medical field. The invention—an "insufflator"—is for use in laparoscopic surgery, which is abdominal surgery performed through small incisions. To create viewing and working space beneath the wall of the abdomen that will enable the surgeon to see what he's doing, the abdominal wall must be elevated ("insufflated" in medical jargon) above the internal organs. This is done by injecting a gas (typically, carbon dioxide) through a tube connected to a device called a "trocar" that is inserted into the patient's abdomen through a small incision. (The trocar is a portal through which instruments for performing the surgery are inserted.) The other end of the tube is plugged into the insufflator, which receives the gas and regulates its flow into the patient's abdomen.

I'm going to give you some preliminary instructions to orient you to the case. Throughout the instructions, I may use the term "he," rather than "he or she," just for ease of reading. I'll give you more detailed instructions later, when the trial is over and you are about to consider what your verdict will be.

Patents are issued by the United States Patent and Trademark Office and are intended to encourage the development of new technologies and inventions by giving anyone who comes up with such an invention—the inventor—the right to prevent anyone else from making, using, selling, or offering to sell his patented invention, except with the inventor's permission, for about twenty years. The idea is to enable the inventor to make money off of his invention, which encourages inventors. Without patents, an inventor might not be able to make much money off of an invention because others could copy the invention and he would have no way of stopping them. In addition, patents drive people and companies to design new products that avoid patents. When people and companies design new products that avoid patents, technology evolves and improves. If someone else does make, use, sell, or offer to sell a patented invention without the inventor's permission—or as it's said in patent law, "infringes the patent"—the owner of the patent can sue the alleged violator (the "infringer") in federal court. If the inventor wins, the defendant may be forced to stop infringing the patent or to pay the inventor for having infringed. Even if the defendant did infringe the patent, however, the defendant can still win the case if he can prove that the patent was "invalid," meaning the Patent and Trademark Office made a mistake in issuing it. The Patent and Trademark Office does sometimes make mistakes and sometimes does not have knowledge of all the previous work done in the area of a patent. Both infringement and validity are issues in this lawsuit, as I'll explain.

The parties to this lawsuit are three companies: Northgate, Stryker, and WOM. Northgate is the plaintiff. Stryker and WOM are the defendants. I sometimes call Stryker and WOM "Defendants" throughout these instructions. Northgate owns the patent, and Defendants sell laparoscopic insufflators that Northgate says infringe its patent. Defendants deny that they infringe the patent, and in the alternative claim that the patent is invalid.

1.2

**Product** – Northgate alleges that WOM makes and sells to Stryker, and Stryker then sells an insufflator called the PneumoSure. You also may hear WOM call the PneumoSure insufflator the F114. You are to consider whether this device infringes Northgate's patent.

Defendants also sell a variety of tube sets and adapters used in connection with this insufflator. You will hear testimony about a number of different tube sets, but the tube sets at issue for liability are the RTP tube sets.

1.3

**Trial Order** - For the '592 patent, you must consider whether it is invalid and whether Stryker and WOM's product infringes it. You should consider the validity and infringement of the patent separately.

1.4

**Court-Appointed Witness** (Liability) – The court has appointed Professor David Lipson to help explain the technology at issue in this case. He is not affiliated with Northgate, Stryker, or WOM, and has no stake in the outcome of the case. He is here simply to help you reach a more informed decision. The parties will present their evidence, which will include testimony by witnesses about whether the Northgate patent is invalid and whether Defendants' insufflator infringes it. Professor Lipson will offer his own opinions about infringement and validity.

1.5

**Infringement** - The invention protected by a patent is described in the section of the patent labeled "patent claims." The claims are set forth in separately numbered paragraphs at the end of the patent. Although Northgate's patent has many claims, Northgate is only arguing that Defendants' product infringes a few claims of the patent. Each claim is further made up of "elements," which are the individual components of the invention described in the claim. For example, a patent on a new type of lamp would have elements such as a light bulb, an electrical cord, a lampshade, and so on. A claim in a valid patent gives its inventor only the right to stop others from making, using, selling, or offering to sell a device that has all of the elements described in the claim, or elements that are equivalent to all of those elements. A patent is not infringed by a device that is similar to the patented invention unless that device contains every element described by the patent claim, or equivalents to those elements.

For that reason, when a product (in this case, Defendants' product) is accused of infringing a patent, the patent claims must be compared to the product very closely. To prove infringement, Northgate (who is the owner of the patent) must prove that every element in one of the patent's claims is found in Defendants' product, whether as an exact duplicate of the element or as being "equivalent" to it, meaning that a person of "ordinary skill" in the relevant field of technology would have considered the differences between them to be insubstantial. (A person of "ordinary skill" in the technological field to which the patented invention belongs is a person who has the education and experience necessary for a competent understanding of the technology described in the patent. He doesn't have to be a genius, but for complicated

technologies he may need to have studied that type of technology in college or have worked with that technology for a number of years before reaching the level of "ordinary skill.") Any difference is insubstantial if, for each element of the patented claims, a feature of Defendants' product performs substantially the same function and works in substantially the same way to achieve substantially the same result as that element. The range of "equivalence" may be limited by arguments that were made by the inventor while he was trying to get the U.S. Patent Office to allow the claims of his patent.

When deciding infringement, you will compare the patent claims to Defendants' product. You should consider only the aspects of the devices related to those patent claims. You must not consider other similarities or differences between Defendants' product and Northgate's product.

For Northgate to prove infringement of the patent at issue in this case, it must convince you that its position is more likely true than false.

1.6

**Willful infringement** – Northgate contends not only that Defendants infringed Northgate's patent, but that they did so "willfully."

To prove willful infringement by one of the defendants, Northgate must persuade you by clear and convincing evidence that it is highly probable that before September 4, 2012, that defendant acted with reckless disregard of the claims of Northgate's patent. "Clear and convincing evidence" means evidence that convinces you that it is highly likely that the proposition is true. You must first decide whether there was infringement, under the lower standard of proof that I mentioned in section 1.5, and if you find that there was, you should go on to decide whether the infringement was willful under the higher "clear and convincing evidence" standard of proof. You should also consider Stryker and WOM separately—meaning that one party might infringe Northgate's patent willfully and the other does not infringe willfully (or neither infringe Northgate's patent willfully, or both do).

To demonstrate "reckless disregard," Northgate must satisfy a two-part test. The first part of the test is objective. Northgate must persuade you that a defendant acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. This is a question for me to decide.

The second part of the test does depend on the state of mind of that defendant. Northgate must persuade you that that defendant actually knew, or it was so obvious that that defendant should have known, that its actions constituted infringement of a valid patent. This second part is a question for you, the jury, to decide.

In deciding whether a defendant acted with reckless disregard for Northgate's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

Factors that may be considered as evidence that a defendant was not willful include:

(1) Whether that defendant acted in a manner consistent with the standards of commerce for its industry; and

(2) Although there is no obligation to obtain an opinion of counsel, whether that defendant relied on a legal opinion that was well-supported and believable and that advised that defendant (1) that the product did not infringe Northgate's patent or (2) that Northgate's patent was invalid.

1.7

**Validity** - To be entitled to patent protection, an invention must be new, useful, and nonobvious. If the Patent and Trademark Office gives someone a patent for an invention that does not meet all three of these requirements, then the Patent and Trademark Office has made a mistake and the patent (or the particular claim of the patent that fails to meet those requirements) is invalid. Defendants contend that all of the claims that Northgate is asserting are in fact invalid. Because the Patent and Trademark Office has considered these requirements in making the decision to issue patents, the law presumes that patents are valid. But you, the jury, can decide that the presumption is incorrect and invalidate a patent or a particular claim in a patent. To succeed with their claim of invalidity, Defendants must prove invalidity by clear and convincing evidence. The standard of proof for invalidity is easier to meet where the prior technology Defendants rely on was not considered by the Patent and Trademark Office. It can prove invalidity in the following ways:

**Anticipation** - A patent claim is invalid if all of its elements were already contained in an existing invention—in other words it had already been invented—even if the inventor didn't know about the earlier invention.

**Obviousness** - A patent claim is also invalid if the invention claimed is obvious. An invention is obvious if a person who had ordinary skill in the technology relevant to the invention and was aware of the "prior art" already existing at the time of the invention would have come up with the invention at that time, or in other words would have viewed the invention as obvious. ("Prior art" is just patent speak for what was already known in the relevant field when the patented technology was invented. It is the same as prior technology, which is the term I will use throughout these instructions.)

When deciding obviousness, you should ask not whether it would seem obvious to a person of ordinary skill in the field today, but whether it would have been obvious at the time the patented technology was invented. In other words, you should not use hindsight. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have taken in reviewing the prior technology at the time of the invention.

1.8

**The Jury's Role** - The jury's job is to determine the facts relating to the legal issues. I will tell you what the law is and you'll apply the law to the facts to determine which side wins. Nothing I say during the trial is intended to indicate what I think the facts are or your verdict should be. You're the decision makers; I'm the traffic cop. Although this is a civil case rather than a criminal case, it is very important to the parties. They and I expect you to make a careful,

thoughtful, conscientious decision, bearing in mind the importance of the case to the parties. The parties are companies rather than individuals, but they have legal rights just as individuals do and are entitled to the same consideration that you would give a case between individuals.

1.9

**Evidence** - The evidence you'll be hearing or reading consists of testimony of witnesses, documents admitted into evidence as exhibits, and any facts that the lawyers agree to or that I may instruct you to accept as being true. The exhibits are in binders, one from each side, which you will be given momentarily.

The parties may present the testimony of a witness by playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had appeared in court.

Certain things are not evidence and must not be considered by you:

- Statements, arguments, and questions by lawyers.

- Objections to questions or exhibits. Lawyers are entitled to object to evidence that it would be inappropriate for the jury to consider, according to the Federal Rules of Evidence. If an objection is sustained, you should ignore the question or exhibit. If the objection is overruled, treat the answer or exhibit like any other.

- Testimony that I have excluded or told you to disregard.

- Anything you may see or hear outside the courtroom. You're to decide the case solely on the basis of the evidence presented in the courtroom. Information you may come across outside the courtroom, through online research, for example, is often incorrect or misleading and may have been written by someone with an interest in swaying your decision unfairly. We are not trying to hide information from you, just ensure that it is presented fairly and accurately, so if you have any questions about the issues in the case, please ask me.

- Certain exhibits that are called "demonstrative exhibits." These include devices, models, diagrams, graphs, and sketches. Demonstrative exhibits may be shown to you but they are not themselves evidence; they're just visual aids to help you understand the case better.

In deciding whether any fact has been proved, you should consider all the evidence relating to the question regardless of which side introduced it. You should also decide how much of a witness's testimony to accept or reject. This includes the neutral, court-appointed witnesses. Just because they are not beholden to either party doesn't mean their testimony is necessarily entitled to more weight than other witnesses you will hear from.

1.10

**Jury Conduct** - As jurors it is your duty to follow these rules to make sure that the case is decided fairly:

You may not discuss the case among yourselves until the end of the case when you go to the jury room to deliberate and to decide on your verdict.

You may not talk, email, text, chat, or communicate to anyone (including family or friends) or make any public or online comments about this case until the trial has ended and you have been discharged as jurors. And any online comment really means any online comment: you may not post about the case on Facebook or Twitter or websites, for example—even comments you may think are completely innocent and lacking in substance (not even "that Judge Posner is a really nice guy").

You may not read or listen to anything bearing on this case in any way, including things your friends or family may want to tell you, news stories, radio or television reports, or the internet. You may not do any research online or conduct any other type of investigation of the case, the lawyers, the witnesses, or the companies that are involved. We are not trying to hide information from you, just ensure that it is presented fairly and accurately. (If you want information about any aspect of the case or the law, you can ask me either by sending a note to me via the courtroom deputy or by raising your hand.) If anyone tries to talk to you about the case, bring that to my attention promptly.

As I mentioned, you will be given exhibit binders to use during the trial. You must leave the binders here at night and leave them in the courtroom during breaks until your deliberations at the end of trial.

You may ask questions of the witnesses. If you want to ask a question of a witness, raise your hand and I'll ask you to ask me the question first, so that I can make sure that it's in a form that's proper for the witness to answer.

Keep an open mind while listening to and reading all the evidence. Don't form an opinion until all the evidence is in.

You've been given pads on which to make notes if you want, but leave the pads in the jury room at the end of each day, until you begin your deliberations with the other jurors. Try not to look at other jurors' notes; but if you inadvertently see them, don't let them influence you, because they may not be accurate.

1.11

The trial will now begin. Each side will make an opening statement. That is not evidence, but just a sketch of what the party intends to prove. We will then move through the patent. For the patent, one of the neutral witnesses will give a presentation, after which each side will question its witnesses, and the lawyers for the other side will cross-examine them, to try to bring out errors in their testimony. Then the neutral witness will testify, and the parties will cross-examine him. After all the witnesses have testified, the lawyers will present closing

arguments. I will then give you final instructions, setting forth the law in somewhat greater detail than in these preliminary instructions, and you'll then go to the jury room with a copy of the instructions, your notes, and your evidence binders, to deliberate on your verdict.

## FINAL INSTRUCTIONS (LIABILITY)

2.1

Members of the jury, you've seen and heard all the evidence and arguments of the lawyers. Now it's your turn. You'll decide, on the basis of the evidence you've heard and read, what the facts are that relate to how the case should be decided, and you'll apply the law that I explain to you in these instructions to the facts to reach a verdict the final determination of how the case will turn out. You must follow my legal instructions, even if you disagree with them, because they state the law, and you must apply the law, just like a judge.

Perform these duties fairly and impartially.

Nothing I say now, and nothing I said during the trial, is meant to indicate what I think the facts are or your verdict should be.

2.2

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations, which are agreements between both sides that certain facts are true. You should give the same consideration to testimony presented to you by video as you would if the witnesses had come to court and testified live.

2.3

These things are not evidence:

- Testimony or exhibits that I ordered stricken.

- Anything you saw or heard outside this courtroom.

- Questions to witnesses, and objections to questions by lawyers.

- The lawyers' opening statements and closing arguments.

- Any notes you took during the trial; they are just to help you remember things.

2.4

In determining whether any fact has been proved, you should consider all of the evidence relating to the question regardless of which side introduced it.

2.5

You must decide whether a witness's testimony is accurate, in whole, in part, or not at all, and how much weight, if any, to give that testimony in resolving a factual issue. You shouldn't just count noses: the fact that one side presents more witnesses, testimony, or other evidence on an issue than the other side doesn't mean the first side is right.

When evaluating testimony, you may consider, among other things, the witness's manner while testifying, whether the witness's testimony is reasonable in light of other evidence you've heard, and any bias or interest the witness may have.

2.6

You have heard some opinions from witnesses who were called to testify because they have specialized knowledge. You should weigh their testimony in the same way that you weigh the testimony of any other witness. You are not required to accept an opinion of a witness who has specialized knowledge, but you must give such a witness's testimony the weight you think it deserves, considering the reasons the witness gave for the opinion, the witness's qualifications, and the other evidence in the case. This goes for the court-appointed witnesses, too.

2.7

**"Ordinary skill in the technology"** - Some infringement and invalidity issues in patent cases are determined by reference to a "person of ordinary skill in the art," which really means ordinary skill in the technology of the patent. It is up to you to decide the level of ordinary skill for the asserted patent. When deciding on the level of ordinary skill, consider the sophistication of technology in the field, the types of problems encountered in the field, and the level of education and experience of those working in the field.

2.8

The issues you have to decide are:

1.      whether Northgate has proved that it is more likely than not that Stryker and WOM have infringed claims 1, 2, 3, 9, 10, 25, 26, 42 or 43 of the '592 patent;

2.      only if you find infringement of any patent claim, whether Northgate has proved by clear and convincing evidence that Stryker infringed that claim willfully;

3.      4.      only if you find infringement of any patent claim, whether Northgate has proved by clear and convincing evidence that WOM infringed that claim willfully;

4.      whether Stryker or WOM has proved by clear and convincing evidence that any of claims 1, 2, 3, 9, 10, 25, 26, 42, or 43 of the '592 patent is invalid.

2.9

A product infringes a patent if every element in a claim is found in Defendants' product. The patent claims are the numbered sentences at the end of each patent. While the patent also includes diagrams and text, known as the patent's "specification," that describe the invention or give examples of how it could be used, the claims are what define what the patent covers.

Each claim is treated as though it is a separate patented invention; Defendants do not need to have infringed every claim in a patent for you to find infringement, and indeed Northgate

has only argued that Defendants infringed a few claims of the patent. If Defendants infringed a single claim, then they have infringed Northgate's patent.

2.10

In order for you to find infringement, Northgate has to prove that it is more likely than not that Defendants infringed each element of a claim of Northgate's patent. Northgate must prove that every element in the claim that you are considering is found in Defendants' product. This can be proved in either of two ways. An element of a claim is found in Defendants' product if the element in its product is exactly the same as it is in the claim in Northgate's patent, or alternatively, if the element in Defendants' product is equivalent to the element in the claim.

So what exactly is "equivalence"? An element in the product that is alleged to infringe Northgate's patent is equivalent to an element in the patent if the differences between the two would be thought insubstantial by a person of "ordinary skill" in the field of knowledge relating to the invention. (A person of "ordinary skill" in the technological field to which the patented invention belongs just means a person who has the education and experience necessary for a competent understanding of the technology described in the patent; he doesn't have to be a genius. It is up to you to decide the level of ordinary skill for the '592 patent.) To determine whether the differences are substantial or insubstantial, you should consider whether the element in question performs substantially the same function, in substantially the same way, to achieve substantially the same result, as an element of the claim. If so, the elements are equivalent.

However, Stryker and WOM's device cannot infringe Northgate's patent by equivalence if the element in question is the same as what was in the prior technology, or if it would have been obvious to a person with ordinary skill in light of prior technology. Also, the range of equivalence may be limited by arguments that were made by the inventor while he was trying to get the Patent Office to allow the claims of his patent.

2.11

**Defined Terms** - A few words in the patent don't have their everyday meaning. It is my role as judge to define the terms of the claims and it is your role to apply my definitions to the questions that you are asked to decide in this case. You can find my definitions to these words in the appendix to these instructions. You must accept my definitions of these claim terms as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity. If I haven't provided you with a definition for a word, then you should apply its ordinary meaning.

2.12

**Products** - Northgate alleges that WOM makes and sells to Stryker, and Stryker then sells to its customers an insufflator called the PneumoSure. WOM also calls the PneumoSure insufflator the F114. You are to consider whether this device infringes Northgate's patent.

Defendants also sell a variety of tube sets and adapters used in connection with this insufflator. You will hear testimony about a number of tube sets, but the tube sets at issue for liability are the RTP tube sets.

2.13

Consider separately whether Defendants' device infringes each disputed claim of Northgate's patent. A device infringes a patent if every element in one of the patent's claims (or its equivalent) is found in the device. The parties have identified the elements you must find present in Defendants' device to find infringement. I list them here. The terms in bold are the terms I've defined. My definitions are at the end of these instructions.

For the '592 patent, the claims in dispute are claims 1, 2, 3, 9, 10, 25, 26, 42 and 43. Claims 1, 25, and 42 are called "independent" claims. Claims 2, 3, 9, 10, 26, and 43 are called "dependent" claims. Accordingly, claims 2, 3, 9, and 10 depend from claim 1. Claim 26 depends from claim 25. Claim 43 depends from claim 42.

A brief word about dependent claims: To prove infringement of any dependent claim, Northgate must prove that it is more likely than not that all of the elements of the independent claim from which it depends (*i.e.*, claim 1, 25, or 42) and the dependent claim itself, are met.

Below is claim 1 of the '592 patent. To find infringement of claim 1 you must find that Defendants' device contains each element of this claim:

1. An insufflation system for use with laparoscopic surgical equipment comprising:

a delivery assembly for **delivering insufflating gas from a pressurized source of insufflating gas to at least one gas delivery path and a separate sensing line** that are connectable to a laparoscopic surgical equipment that is insertable into a peritoneal cavity;

a **separate sensing assembly** connected to said separate sensing line; and

a controller coupled to said delivery assembly and said separate sensing assembly, wherein said controller monitors said separate sensing assembly to confirm absence of leakage in said separate sensing line and unobstructed connection of said separate sensing line to said peritoneal cavity,

and further wherein said controller provides for **continuous delivery of insufflating gas** via said delivery assembly upon said confirming and otherwise provides for **non-continuous delivery of insufflating gas** via said delivery assembly.

Below is claim 2 of the '592 patent. To find infringement of claim 2 you must find that Defendants' device contains each element of claim 1 as well as:

2. The insufflation system of claim 1, wherein said separate sensing assembly **continuously monitors pressure** within said peritoneal cavity.

Below is claim 3 of the '592 patent. To find infringement of claim 3 you must find that a

Stryker or WOM device contains each element of claim 1 as well as:

3. The insufflation system of claim 1, wherein said insufflating gas is delivered first at a periodic rate and then at a continuous rate.

Below is claim 9 of the '592 patent. To find infringement of claim 9 you must find that Defendants' device contains each element of claim 1 as well as:

9. The insufflation system of claim 1, wherein said separate sensing assembly includes at least one pressure measuring device.

Below is claim 10 of the '592 patent. To find infringement of claim 10 you must find that a Stryker or WOM device contains each element of claim 1 as well as:

10. The insulation system of claim 1, wherein said separate sensing assembly includes at least one pressure measuring device in communication with said controller.

Below is claim 25 of the '592 patent. To find infringement of claim 25 you must find that Defendants' device contains each element of this claim:

25. An insufflation system, comprising:

a delivery assembly for **delivering insufflating gas from a pressurized source to at least one gas delivery path and a separate sensing line** that are insertable into a peritoneal cavity;

**an internal sensing assembly connected to said separate sensing line through a first control valve**; and

a controller coupled to said delivery assembly and said first control valve to control insufflation pressure and gas flow rates, wherein said controller provides for **continuous delivery of insufflating gas** upon absence of leakage in said separate sensing line and unobstructed connection of said separate sensing line to said peritoneal cavity and otherwise provides for non-continuous delivery of insufflating gas.

Below is claim 26 of the '592 patent. To find infringement of claim 26 you must find that Defendants' device contains each element of claim 25 as well as:

26. The insufflation system of claim 25 wherein said **first control valve** is responsive to said controller.

Below is claim 42 of the '592 patent. To find infringement of claim 42 you must find that Defendants' device contains each element of this claim:

> 42. An insufflation system, comprising:
>
> > a delivery assembly for **delivering insufflating gas from a pressurized source to at least one gas delivery path and a separate sensing line** that are insertable into a peritoneal cavity;
> >
> > **an internal sensing assembly connected to said separate sensing line through a first control valve**; and
> >
> > a controller coupled to said delivery assembly and said first control valve to control insufflation pressure and gas flow rates, wherein said controller confirms absence of leakage in said separate sensing line and unobstructed connection of said separate sensing line to said peritoneal cavity.

Below is claim 43 of the '592 patent. To find infringement of claim 43 you must find that Defendants' device contains each element of claim 42 as well as:

> 43. The insufflation system of claim 42 wherein said **first control valve** is responsive to said controller.

2.14

**Willful Infringement** – Northgate contends not only that Stryker and WOM infringed Northgate's patent, but also that Stryker and WOM did so willfully. You are to consider willful infringement as to each of Stryker and WOM separately only if you have first found that Defendants committed "simple infringement" (that is, that Defendants infringed the patent), under the lower standard of proof that I mentioned earlier (the "more likely than not" standard).

If you find there was infringement as to Defendants, you should go on to decide whether the infringement was willful. To prove willfulness, Northgate must prove by "clear and convincing evidence" both that it was highly likely that Defendants' product infringed and that the Defendant being considered either knew that it was highly likely or should have known that it was. "Clear and convincing" evidence is evidence that makes it highly likely, rather than just more likely than not, that a particular proposition is true.

You should consider Stryker and WOM's conduct separately – meaning that one of these defendants may have willfully infringed Northgate's patent, and the other might not have willfully infringed (or neither willfully infringed, or both did).

2.15

**Invalidity** - Even if you do find that there was infringement of Northgate's patent, that isn't the end of the case. Defendants argue that Northgate's claims are invalid because they were obvious in light of prior technology before the patents were issued and/or because they were anticipated by prior technology. Prior technology means all the information that is publicly known, used by others, or available to a person of ordinary skill at the time of the invention. To qualify, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application. Examples of prior technology include other patents, inventions, products, articles, books, and scientific literature.

If Defendants prove either that the patent was anticipated or obvious by prior technology, they win the case even if they infringed the patents.

**Anticipation** - A patent claim is invalid if it is anticipated. To prove that a claim is anticipated, Defendants must show by clear and convincing evidence that each element of the claim is present in a single piece of prior technology, as understood by a person of ordinary skill in the art, and that, by looking at that one piece of prior technology, a person with an ordinary level of skill in the field would have been able to make and use the invention disclosed in the claim. A piece of prior technology can anticipate a claim without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single piece of prior technology.

In this case, Defendants contend that claims 1, 2, 3, 9, 10, 25, 26, 42, and 43 of the '592 patent are anticipated because these claims were described in a piece of prior technology, a published Japanese patent application, called H6-209901 ("JP 901").

**Obviousness** - A patent claim is invalid if it is obvious. To prove obviousness, Defendants must show by clear and convincing evidence that a person of ordinary skill (as defined earlier), who was aware of the prior technology that existed when the invention was made, would have viewed the invention as obvious. To evaluate obviousness, you should assume that the person of ordinary skill knows all the prior technology existing when the invention was made. You should then determine what he would have thought obvious. You must not use hindsight; that is, you must not consider what is known now, including what could be learned from the patent you are considering.

In making your decision regarding obviousness, you should consider the scope and content of the prior technology and also any differences between the prior technology and the invention in the patent claim. These factors are the primary factors that you should consider in deciding the question of obviousness, but you should also consider the following secondary factors, which may indicate that Northgate's invention was not obvious: whether other inventors failed in attempting to make the invention in the patent claim; or copied the invention; or praised it; or sought or obtained from Northgate a license to the patent. It is for you to decide how much weight to give each factor that you find is present. But remember that these are secondary factors, and you must not give them as much weight as the primary factors listed above.

You may take into account the inferences and creative steps that a person of ordinary skill in the art would have taken in reviewing the prior technology at the time of the invention. You should consider whether a reason existed at the time of the invention that would have prompted a person or ordinary skill to combine the known elements the way the claims do. The reason could come from the prior technology, the knowledge of a person of ordinary skill, the nature of the problem, the market, or common sense. A person of ordinary skill using common sense might combine elements from different pieces of prior technology, like fitting together the pieces of a puzzle.

A final point: recall that, as I explained earlier, to find obviousness you can combine multiple pieces of prior technology. You cannot combine prior technology to establish invalidity by anticipation; only a single specific piece of prior technology can anticipate a patent.

In this case Defendants contend that claims 1, 2, 3, 9, 10, 25, 26, 42, and 43 of the '592 patent are invalid because the claims are obvious. Defendants allege that the prior art that shows the claims of the '592 patent are obvious include the following:

1)      JP 901;

2)      German Patent Application DE 42 19 859 ("DE 859");

3)      German Patent Application DE 43 39 876 ("DE 876");

4)      United Kingdom Patent Application GB 2 198 948 ("GB 948");

5)      United States Patent No. 5,360,396 to Chan ("Chan 396"); and

6)      The Snowden-Pencer Device.

2.17

When you go to the jury room for your deliberations, first select one of you to be the foreperson. He or she will preside over your deliberations and will be your representative here in court.

Verdict forms have been prepared for you. Take them to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

2.18

The verdict must represent the considered judgment of each juror and must be unanimous—meaning that every juror must agree on how a given question should be answered—whether the verdict is in favor of Northgate or in favor of Defendants, or for Northgate on some issues and Defendants on others. You should make every reasonable effort to reach a unanimous verdict and in doing so you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views, and to change your opinion if you

come to believe it is wrong.  But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

2.19

     If it becomes necessary during your deliberations to communicate with me, you may send a note by a court security officer, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any other means. If you have trouble reaching a unanimous verdict, you must not tell me or anyone else which side is favored by more jurors.

## DEFINED TERMS IN THE PATENT CLAIMS

**'592 patent terms:**

"delivering insufflating gas," when used in the '592 patent, means "delivering gas used with an insufflator" from a pressurized source of gas to at least one gas delivery path and a separate sensing line.

"separate sensing assembly," or "internal sensory assembly" when used in the '592 patent, means "the sensor plus the source of the gas flow in the separate sensing line"

"continuous delivery of insufflating gas," and "insufflating gas is delivered … at a continuous rate, when either term is used in the '592 patent, means "continuous except for occasional, unplanned interruptions attributable to mishap"

"non-continuous delivery of insufflating gas," when used in the '592 patent means the obverse of "continuous delivery of insufflating gas"

"continuously monitors pressure," when used in the '592 patent, means "monitors pressure with no interruptions, i.e., 100 percent of the time"

"first control valve," when used in the '592 patent, means an "on-off valve"

"an internal sensing assembly connected to said separate sensing line through a first control valve," when used in the '592 patent, means "a sensor that is connected to and measures pressure in the separate sensing line and a valve capable of affecting gas flow from the separate sensing line to the sensor"; where internal sensory assembly is "the sensor plus the source of the gas flow in the separate sensing line" and the first control valve is "an on-off valve."

## JURY VERDICT FORM

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Your answer to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the Jury Instructions. Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

We, the jury, unanimously agree to the answers to the following questions.

## NORTHGATE'S '592 PATENT – CLAIM FOR INFRINGEMENT

1. **Literal Infringement**. Do you find that Northgate has proved that it is more likely than not that Defendants' device infringes the following claims of the '592 patent literally?

The PneumoSure literally infringes Claim 1 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 2 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 3 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 9 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 10 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 25 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 26 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 42 of '592: ☐ YES ☐ NO

The PneumoSure literally infringes Claim 43 of '592: ☐ YES ☐ NO

2. **Infringement by Equivalence**. If you answered "YES" to all questions in Question 1 above, skip this question. Otherwise, for those questions you answered "NO," do you find that Northgate has proved that it is more likely than not that Defendants' device is equivalent to the element in the disputed claim?

The PneumoSure infringes Claim 1 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 2 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 3 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 9 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 10 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 25 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 26 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 42 of '592 under equivalents: ☐ YES ☐ NO

The PneumoSure infringes Claim 43 of '592 under equivalents: ☐ YES ☐ NO

3. **Willful Infringement**. If you find that the Stryker device has not infringed Northgate's '592 patent, skip this question. Otherwise, has Northgate proved by clear and convincing evidence that Stryker knew or should have known that its actions constituted infringement of a valid patent?

☐ YES ☐ NO

4. **Willful Infringement**. If you find that the WOM device has not infringed any claim of Northgate's '592 patent, skip this question. Otherwise, has Northgate proved by clear and convincing evidence that WOM knew or should have known that its actions constituted infringement of a valid patent?

☐ YES ☐ NO

## NORTHGATE'S '592 PATENT – STRYKER AND WOM'S COUNTERCLAIM FOR INVALIDITY

5. **Invalidity (Anticipation)**. Do you find that Stryker or WOM has proved by clear and convincing evidence that any of the following claims of the '592 patent is invalid as anticipated by prior technology?

Claim 1 of '592 is anticipated by prior technology: ☐ YES ☐ NO

Claim 2 of '592 is anticipated by prior technology: ☐ YES ☐ NO

Claim 3 of '592 is anticipated by prior technology: ☐ YES ☐ NO

Claim 9 of '592 is anticipated by prior technology: ☐ YES ☐ NO

2

Claim 10 of '592 is anticipated by prior technology: ☐ YES ☐ NO

Claim 25 of '592 is anticipated by prior technology: ☐ YES ☐ NO

Claim 26 of '592 is anticipated by prior technology: ☐ YES ☐ NO

Claim 42 of '592 is anticipated by prior technology: ☐ YES ☐ NO

Claim 43 of '592 is anticipated by prior technology: ☐ YES ☐ NO

6.     **Invalidity (Obvious)**.  Do you find that Stryker or WOM has proved by clear and convincing evidence that any of the following claims of the '592 patent is invalid as obvious?

Claim 1 of '592 is obvious: ☐ YES ☐ NO

Claim 2 of '592 is obvious: ☐ YES ☐ NO

Claim 3 of '592 is obvious: ☐ YES ☐ NO

Claim 9 of '592 is obvious: ☐ YES ☐ NO

Claim 10 of '592 is obvious: ☐ YES ☐ NO

Claim 25 of '592 is obvious: ☐ YES ☐ NO

Claim 26 of '592 is obvious: ☐ YES ☐ NO

Claim 42 of '592 is obvious: ☐ YES ☐ NO

Claim 43 of '592 is obvious: ☐ YES ☐ NO