# EXHIBIT B

### *Defendants' Proposed Instructions – Damages Phase*

## JURY INSTRUCTIONS (DAMAGES)

## INTRODUCTORY INSTRUCTIONS

1.1

**Introduction** - This case involves one patent, called the '592 patent (it actually has a longer number, but for convenience we'll use just the last three digits). Northgate's patent relates to technology in the medical field. The invention—an "insufflator"—is for use in laparoscopic surgery, which is abdominal surgery performed through small incisions. To create viewing and working space beneath the wall of the abdomen that will enable the surgeon to see what he's doing, the abdominal wall must be elevated ("insufflated" in medical jargon) above the internal organs. This is done by injecting a gas (typically, carbon dioxide) through a tube connected to a device called a "trocar" that is inserted into the patient's abdomen through a small incision. (The trocar is a portal through which instruments for performing the surgery are inserted.) The other end of the tube is plugged into the insufflator, which receives the gas and regulates its flow into the patient's abdomen.

I'm going to give you some preliminary instructions to orient you to the case. I'll give you more detailed instructions later, when the trial is over and you are about to consider what your verdict will be.

Patents are issued by the United States Patent and Trademark Office and are intended to encourage the development of new technologies and inventions by giving anyone who comes up with such an invention—the inventor—the right to prevent anyone else from making, using, selling, or offering to sell his patented invention, except with the inventor's permission, for about twenty years. The idea is to enable the inventor to make money off of his invention, which encourages inventors. Without patents, an inventor might not be able to make much money off of an invention because others could copy the invention and he would have no way of stopping them. If someone else does make, use, sell, or offer to sell a patented invention without the inventor's permission—or as it's said in patent law, "infringes the patent"—the owner of the patent can sue the alleged violator (the "infringer") in federal court. If the inventor wins, the defendant may be forced to stop infringing the patent or to pay the inventor for having infringed. You must presume that the patent here is valid and that Stryker and WOM infringe the patent. The issue here is the determination of damages, as I'll explain.

The parties to this lawsuit are three companies: Northgate, Stryker, and WOM. Northgate is the plaintiff. Stryker and WOM are the defendants. I sometimes call Stryker and WOM "Defendants" throughout these instructions. Northgate owns the patent, and Defendants sell laparoscopic insufflators that infringe its patent.

1.2

**Product** – Northgate alleges that WOM makes and sells to Stryker, and Stryker then sells an insufflator called the PneumoSure. You also may hear WOM call the PneumoSure insufflator the F114.

Defendants also sell a variety of tube sets and adapters used in connection with this product. You will hear testimony about a number of tube sets, but the only tube sets at issue for damages are the RTP tube sets.

1.3

**Trial Order** - For the '592 patent, you must consider the amount of compensation, if any, that Northgate is entitled to as a result of Defendants' infringement.

1.4

**Court-Appointed Witness** (Damages) – The court has appointed Professor Gregory Sidak to help explain the damages at issue in this case. He is not affiliated with Northgate, Stryker, or WOM, and has no stake in the outcome of the case. He is here simply to help you reach a more informed decision. The parties will present their evidence on damages. Professor Sidak will offer his own opinions about potential damages.

1.5

**Damages** – You will need to decide any royalty to be awarded to Northgate to compensate it for the infringement. A royalty award should put Northgate in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Northgate would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate Northgate and not to punish Defendants. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Northgate for the infringement, in order to punish Defendants. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

1.6

**The Jury's Role** - The jury's job is to determine the facts relating to the legal issues. I will tell you what the law is and you'll apply the law to the facts. Nothing I say during the trial is intended to indicate what I think the facts are or your verdict should be. You're the decision makers; I'm the traffic cop. Although this is a civil case rather than a criminal case, it is very important to the parties. They and I expect you to make a careful, thoughtful, conscientious decision, bearing in mind the importance of the case to the parties. The parties are companies rather than individuals, but they have legal rights just as individuals do and are entitled to the same consideration that you would give a case between individuals.

1.7

**Evidence** - The evidence you'll be hearing or reading consists of testimony of witnesses, documents admitted into evidence as exhibits, and any facts that the lawyers agree to or that I may instruct you to accept as being true. The exhibits are in binders, one from each side, which you will be given momentarily.

The parties may present the testimony of a witness by reading from a deposition transcript or by playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had appeared in court.

Certain things are not evidence and must not be considered by you:

- Statements, arguments, and questions by lawyers.

- Objections to questions or exhibits. Lawyers are entitled to object to evidence that it would be inappropriate for the jury to consider, according to the Federal Rules of Evidence. If an objection is sustained, you should ignore the question or exhibit. If the objection is overruled, treat the answer or exhibit like any other.

- Testimony that I have excluded or told you to disregard.

- Anything you may see or hear outside the courtroom. You're to decide the case solely on the basis of the evidence presented in the courtroom. Information you may come across outside the courtroom, through online research, for example, is often incorrect or misleading and may have been written by someone with an interest in swaying your decision unfairly. We are not trying to hide information from you, just ensure that it is presented fairly and accurately, so if you have any questions about the issues in the case, please ask me.

- Certain exhibits that are called "demonstrative exhibits." These include models, diagrams, graphs, and sketches. Demonstrative exhibits may be shown to you but they are not themselves evidence; they're just visual aids to help you under-stand the case better.

In deciding whether any fact has been proved, you should consider all the evidence relating to the question regardless of which side introduced it. You should also decide how much of a witness's testimony to accept or reject. This includes the neutral, court-appointed witnesses. Just because they are not beholden to either party doesn't mean their testimony is necessarily entitled to more weight than other witnesses you will hear from.

1.8

**Jury Conduct** - As jurors it is your duty to follow these rules to make sure that the case is decided fairly:

You may not discuss the case among yourselves until the end of the case when you go to the jury room to deliberate and to decide on your verdict.

You may not talk, email, chat, or communicate to anyone (including family or friends) or make any public or online comments about this case until the trial has ended and you have been discharged as jurors. And any online comment really means any online comment: you may not post about the case on Facebook or Twitter or websites, for example—even comments you may

think are completely innocent and lacking in substance (not even "that Judge Posner is a really nice guy").

You may not read or listen to anything bearing on this case in any way, including things your friends or family may want to tell you, news stories, radio or television reports, or the internet. You may not do any research online or conduct any other type of investigation of the case, the lawyers, the witnesses, or the companies that are involved. We are not trying to hide information from you, just ensure that it is presented fairly and accurately. (If you want information about any aspect of the case or the law, you can ask me either by sending a note to me via the courtroom deputy or by raising your hand.) If anyone tries to talk to you about the case, bring that to my attention promptly.

As I mentioned, you will be given exhibit binders to use during the trial. You must leave the binders here at night and leave them in the courtroom during breaks until your deliberations at the end of trial.

You may ask questions of the witnesses. If you want to ask a question of a witness, raise your hand and I'll ask you to ask me the question first, so that I can make sure that it's in a form that's proper for the witness to answer.

Keep an open mind while listening to and reading all the evidence. Don't form an opinion until all the evidence is in.

You've been given pads on which to make notes if you want, but leave the pads in the jury room at the end of each day, until you begin your deliberations with the other jurors. Try not to look at other jurors' notes; but if you inadvertently see them, don't let them influence you, because they may not be accurate.

1.9

The trial will now begin. Each side will make an opening statement. That is not evidence, but just a sketch of what the party intends to prove. We will then move through the patent. For the patent, one of the neutral witnesses will give a presentation, after which each side will question its witnesses, and the lawyers for the other side will cross-examine them, to try to bring out errors in their testimony. Then the neutral witness will testify, and the parties will cross-examine him. After all the witnesses have testified, the lawyers will present closing arguments. I will then give you final instructions, setting forth the law in somewhat greater detail than in these preliminary instructions, and you'll then go to the jury room with a copy of the instructions, your notes, and your evidence binders, to deliberate on your verdict.

## FINAL INSTRUCTIONS (DAMAGES)

2.1

Members of the jury, you've seen and heard all the evidence and arguments of the lawyers.  Now it's your turn.  You'll decide, on the basis of the evidence you've heard and read, what the facts are that relate to how the case should be decided, and you'll apply the law that I explain to you in these instructions to the facts to reach a verdict the final determination of how the case will turn out.  You must follow my legal instructions, even if you disagree with them, because they state the law, and you must apply the law, just like a judge.

Perform these duties fairly and impartially.

Nothing I say now, and nothing I said during the trial, is meant to indicate what I think the facts are or your verdict should be.

2.2

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations, which are agreements between both sides that certain facts are true. You should give the same consideration to testimony presented to you by video as you would if the witnesses had come to court and testified live.

2.3

These things are not evidence:

- Testimony or exhibits that I ordered stricken.

- Anything you saw or heard outside this courtroom.

- Questions to witnesses, and objections to questions by lawyers.

- The lawyers' opening statements and closing arguments.

- Any notes you took during the trial; they are just to help you remember things.

2.4

In determining whether any fact has been proved, you should consider all of the evidence relating to the question regardless of which side introduced it.

2.5

You must decide whether a witness's testimony is accurate, in whole, in part, or not at all, and how much weight, if any, to give that testimony in resolving a factual issue.  You shouldn't just count noses: the fact that one side presents more witnesses, testimony, or other evidence on an issue than the other side doesn't mean the first side is right.

5

When evaluating testimony, you may consider, among other things, the witness's manner while testifying, whether the witness's testimony is reasonable in light of other evidence you've heard, and any bias or interest the witness may have.

2.6

You have heard some opinions from witnesses who were called to testify because they have specialized knowledge. You should weigh their testimony in the same way that you weigh the testimony of any other witness. You are not required to accept an opinion of a witness who has specialized knowledge, but you must give such a witness's testimony the weight you think it deserves, considering the reasons the witness gave for the opinion, the witness's qualifications, and the other evidence in the case. This goes for the court-appointed witnesses, too.

2.7

For its damages, Northgate only seeks a reasonably royalty for (1) insufflators and (2) tube sets. They also seek an upfront payment. You will need to decide on payment of any reasonable royalty to be awarded to Northgate to compensate it for the infringement. A reasonable royalty award should put Northgate in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Northgate would have received had it been paid a reasonable royalty. The damages you award are meant to compensate Northgate and not to punish Stryker and WOM. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Northgate for the infringement, in order to punish Stryker and WOM. I will give you more detailed instructions in a few minutes.

2.8

The issues you have to decide are:

1.      whether Northgate has proved that it is more likely than not that it is entitled to damages from Defendants;

2.      the reasonable royalty rate to which Northgate is entitled;

2.9

Northgate is entitled to at least a reasonable royalty to compensate it for that infringement. You must award Northgate a reasonable royalty for all infringing sales.

2.10

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began, in this case, in September 2007. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted

6

reasonably in their negotiations. You should assume that all parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on any actual profits the alleged infringer made.

2.11

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or

devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

2.12

Northgate alleges that WOM makes and sells to Stryker, and Stryker then sells to its customers an insufflator called the PneumoSure. WOM also calls the PneumoSure insufflator the F114.

Defendants also sell a variety of tube sets and adapters used in connection with this product. You will hear testimony about a number of tube sets, but the only tube sets at issue for damages are the RTP tube sets.

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Defendants have both infringed and been actually or constructively notified of the alleged infringement of the '592 patent:

The parties here dispute when the first products were sold. The parties also disagree as to how many insufflators have been sold that may have infringed the '592 patent. You will have to make these determinations.

Finally, the parties disagree whether Northgate is entitled to a royalty on tube sets. You will need to decide whether Northgate has proven it is more likely than not that it is entitled to royalties.

Therefore, after you determine the reasonable royalty rate, you must determine the damage to Northgate, which is either (1) the rate times the number of products sold, or (2) an up-front royalty payment. However, you cannot award both a reasonable royalty and an up-front royalty payment.

2.13

When you go to the jury room for your deliberations, first select one of you to be the foreperson. He or she will preside over your deliberations and will be your representative here in court.

Verdict forms have been prepared for you. Take them to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

2.14

The verdict must represent the considered judgment of each juror and must be unanimous—meaning that every juror must agree on how a given question should be answered—whether the verdict is in favor of Northgate or in favor of Defendants. You should make every reasonable effort to reach a unanimous verdict and in doing so you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views, and to change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

2.15

If it becomes necessary during your deliberations to communicate with me, you may send a note by a court security officer, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any other means. If you have trouble reaching a unanimous verdict, you must not tell me or anyone else which side is favored by more jurors.

## JURY VERDICT FORM

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Your answer to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the Jury Instructions. Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

We, the jury, unanimously agree to the answers to the following questions.

## NORTHGATE'S '592 PATENT – CLAIM FOR DAMAGES

1. **Damages**. Has Northgate proved by a preponderance of the evidence that it is entitled to damages in the form of a reasonable royalty?

☐ YES ☐ NO

2. **Royalty**. If the answer to question 1 is yes, what is reasonable royalty rate to which Northgate is entitled:

_____ royalty rate per insufflator

_____ royalty rate for tube sets

**OR**

_____ up-front royalty payment

3. **Calculation of Damages**. If the answer to question 1 is yes, what damage is awarded to Northgate:

$_____